BRIDGET DONAHUE *vs.* T. PICKERING DROWN.

Suffolk. March 10, 1891. — May 20, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Negligence — Due Care.*

A girl employed in a factory was set to clean a machine not in motion, and, while doing so in a way which was safe if it so remained, but dangerous otherwise, was injured by its starting up. In an action for such injuries brought by her against her employer, there was evidence that the starting of the machine was caused by a casual shifting of a belt, which a proper construction and arrangement of pulleys and adjustment of the belt would have prevented; and that she was not aware of the danger, and believed the machine to be all right, although she had seen one other machine so start, upon which she was not working at the time. *Held*, that the case was properly submitted to the jury.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ. At the trial in the Superior Court, before *Lathrop*, J., there was evidence tending to prove the following facts.

The defendant was a manufacturer of candy, and on October 9, 1888, the plaintiff, who was then twenty years old and had been in his employ for about a year, was set to work by his foreman to clean one of the machines in his factory. This machine was fastened to the floor, and consisted in part of an upright cylinder for receiving the sugar paste out of which a form of candy was made. At the bottom of the cylinder was a revolving screw for seizing and forcing the paste through the small holes of a disk, placed opposite the end of it, whence it appeared in the form of long pipe-stems, which were then dried and cut up into pieces. This screw was made to revolve by a belt connecting a fixed pulley on the machine with a driving pulley attached to the main shaft of the factory. Alongside this fixed pulley, and separated from it by the distance of half an inch, was a loose pulley on the machine. To stop the machine when

in motion, it was only necessary to throw the belt from the fixed to the loose pulley by means of a shipper, so called, which was made of wood and placed at a distance of about eighteen inches from the cylinder, and worked up and down. To shift the belt from the loose to the fixed pulley, the shipper was pulled down. This shipper was improperly secured at the end, and was loose. When the machine was to be cleaned, a trough upon the top of the cylinder, and from which the paste was fed into it, was taken off, and the interior of the cylinder including the screw exposed to view. When the plaintiff was ordered to clean the machine, it was not in motion. The cylinder was cleaned by pouring in hot water to melt the paste sticking to the different portions of its interior, so that it would float off with the water through the bottom of the machine, or by scraping off such paste therefrom. A small iron scraper was sometimes used thus to remove the paste, and rags were used to wipe out the inside of the cylinder. The plaintiff proceeded to clean the machine by pouring hot water into the cylinder to melt the paste still sticking to in. Some of the paste stuck to the screw, and the plaintiff put her left hand down into the cylinder to take it off with her fingers. At this moment the belt shifted from the loose pulley to the fixed pulley, and the screw began to revolve, and the plaintiff's hand and arm were caught, and she suffered the injuries in question.

Other machines in the defendant's factory had previously started of themselves, and this machine, after the belt had been thrown off by the shipper, had started of itself a month before the accident, as well as afterwards. One Genary, an expert called by the plaintiff, testified, among other things, that in his opinion the machine was defective in that it was not put up properly; that the driving pulley upon the main shaft had a convex surface, instead of a flat surface such as it should have had, and was so situated with reference to the fixed pulley that the tendency was to draw the belt from the loose pulley when the machine was not in motion on to the fixed pulley, and thus to start the machine; and that this tendency was increased by the looseness of the shipper. The plaintiff testified that when she put her hand in the cylinder she did not know that there was any danger in so doing; that she had never seen any other machine that she had worked on start of itself; but that she

had seen other machines in the factory, upon which she was not at work, start of themselves, which fact she had not reported because she did not think it her duty to do so.

The defendant testified that he had never had his attention called to the fact that the machine started of itself until this accident; and that he had never heard and did not believe that the machine could start of itself. The defendant's foreman testified that in his judgment the machine could not start of itself without help, and that he had never heard or known that anything was the matter with the machine; and the defendant's engineer and carpenter both testified that they had never heard of this machine starting of itself.

The judge refused to rule, as requested by the defendant, that the plaintiff was not entitled to recover, and submitted the case to the jury; and the defendant, after a verdict for the plaintiff, alleged exceptions.

*H. M. Rogers & J. Lowell, Jr.*, for the defendant.

*E. C. Bumpus & P. R. Blackmur*, for the plaintiff.

C. ALLEN, J. It was contended by the plaintiff, and there was some evidence to show, that the machine which the plaintiff was engaged in cleaning, as well as some others of the defendant's machines, would " start of themselves," that is, without being started by any person's direct act. The defendant contended that, if the fact was so, it was not known to himself or to his foreman. He testified, indeed, that this machine could not start of itself. The cause of the machine's thus starting of itself, if that did in fact so happen, must be the shifting of the belt from the loose pulley to the fixed pulley. The jury might properly find, upon the evidence, that this was the cause of the starting of the machine at the time of the injury to the plaintiff, and that a proper construction and arrangement of the pulleys and adjustment of the belt would have prevented such a casual shifting of the belt. They might, therefore, properly infer negligence on the part of the defendant in failing to provide machinery constructed, arranged, or set up in such suitable manner as to be sufficiently safe, and that a due examination of the machinery would have disclosed its imperfection. The plaintiff's expert testified that there was a tendency to throw the belt over from the loose pulley on to the fixed pulley, and thus

to start up the screw in the bottom of the cylinder. If this was the fact, it was sufficient to warrant a finding of the defendant's negligence. The omission to provide machinery properly prepared and arranged to guard against a danger of that kind would be negligence for which the master would be responsible, and not merely the negligence of a fellow servant.

But it is contended on the part of the defendant, that, if this danger existed, it was a matter of common knowledge among the operatives, and that the plaintiff herself in the exercise of due care ought to have known it. It is conceded that no notice was given to her of the danger, and there could not have been, since the defendant and his engineer, carpenter, and foreman testified that they were not aware of its existence. The plaintiff, on the other hand, testified that she was not aware of it either, and she contends that she ought not to be held to a higher degree of knowledge than they possessed. She was set to clean a machine which was not in operation, and she was performing this service in a way which would have been safe if the machine did not start up, but which would be dangerous if it were to start up. It becomes a question, therefore, whether she was bound to anticipate that it might start up. The case is obviously different from those where one has been hurt while at work upon or with a machine which was in motion. Here the machine was at rest, and it was to be cleaned by the plaintiff while at rest. If she had put her hand into the cylinder while the screw was in motion, that might be deemed an act of carelessness. But, according to her testimony, she put her hand in while the screw was still, and it started up of itself while her hand was in, so that the question is whether she ought to have anticipated that this might so happen. She testified that she had never seen this machine start of itself, and did not know that it had ever done so; though she had seen other machines so start, at least one other, upon which she was not working at the time. The fact that this had happened within her knowledge with other machines, equipped with other pulleys and belts, might or might not be deemed sufficient to put her on her guard. That would be for the jury to say. As to this particular machine, she testified that she did not suppose or suspect that there was anything out of order, or wrong, or defective, but that she believed it to be all

right. It cannot be said, as matter of law, that she must be held to have been negligent, or to have assumed the risk.

The defendant further contends, that she should have used a scraper to scrape off the paste that stuck to the parts of the machine, or have relied on hot water alone to melt it so that it would float off. There was testimony that a little iron scraper was sometimes used for this purpose. This is a detail in the manner of cleaning the machine in respect to which the jury who saw it could determine better than we. There was other testimony that rags were used for wiping the inside of the cylinder, and this, as well as the use of the little scraper, would seem naturally to involve putting the hand into the cylinder, though possibly the work might have been done otherwise.

On the whole, we find nothing which would have warranted the withdrawal of the case from the jury.

*Exceptions overruled.*