---

BLANTON v. DOLD *et al.*, *Appellants.*

DIVISION ONE.

1. **Master and Servant:** ORDINARY CARE: MACHINERY. The master is not bound to supply the latest or best machinery to his servant; and he does not insure the latter's safety; but he is bound to use ordinary care that such machinery as he furnishes is reasonably safe for the purpose for which it is to be used.

2. ———: ———: ———: NEGLIGENCE. The mere fact that an employe is injured by the action of machinery intrusted to his use does not necessarily raise an inference of negligence in furnishing the machinery.

Blanton v. Dold.

| 109 | 64 |
| 172 | 1 65 |
| 173 | 0 280 |
| 173 | 1 531 |
| 96a | 2 453 |
| 96a | 2 484 |
| 98a | 3 348 |
| 98a | 1 560 |
| 100a | 6 211 |

3. ———: STARTING OF MACHINERY: NEGLIGENCE. Plaintiff was injured by the sudden starting of a machine, contrary to its ordinary mode of operation; *held*, in the circumstances stated in the opinion, that such action of the machinery tended of itself to show a want of care in its construction or condition.

4. ———: ———: ———. The sudden and unusual action of the machinery in this case was not one of the ordinary risks of the employment in which plaintiff was engaged.

5. ———: CONTRACT EXEMPTING MASTER FROM LIABILITY: NEGLIGENCE. An express contract, exempting the master from liability for his own negligence toward his servant, is illegal, as contrary to public policy. *A fortiori*, unknown perils created by the master's negligence are not part of the "usual risks" of the service which the servant impliedly contracts to assume.

6. ———: ORDINARY CARE: NEGLIGENCE. The question of plaintiff's exercise of ordinary care in this case discussed, and held to be a proper one for the jury.

7. Practice in Supreme Court: WEIGHT OF EVIDENCE. The Missouri supreme court has no constitutional power to pass upon the weight of conflicting evidence in an action at law.

8. Practice: NUMEROUS INSTRUCTIONS. The practice of giving numerous instructions to the jury condemned.

9. ———: EXCESSIVE DAMAGES: MOTION FOR NEW TRIAL. Where no complaint of excess in an award of damages is made in the motion for new trial the objection is not available on appeal.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

' Plaintiff sued for personal injuries and obtained a verdict and judgment, from which defendants appealed. The facts appear in the opinion of the court.

*Chase & Powell* for appellants.

(1) Plaintiff's evidence failed entirely to establish the fact that the blood mill was started by any acts of omission or commission in construction of defendants,

which plaintiff alleged in his petition to be the cause of the injury.   Plaintiff charged that the brakes used were not the safest kind, and that by reason thereof the cars moved after the brakes were set.   "The burden was on plaintiff to show that the injury was attributable to the negligence of defendant.   He did not establish his case to show that he was injured without his fault by the movement of the cars when he was attempting to get upon them.   This single fact proved neither neglect nor the absence of negligence on the part of the company." *Henry v. Railroad*, 81 N. Y. 374; *Duffy v. Upton*, 113 Mass. 544.   (2) The plaintiff who avers negligence must prove it, and evidence that the manner in which machinery was run was not the safest manner in which to run it was not proof that said manner was careless or negligent.   *Muirhead v. Railroad*, 19 Mo. App. 643; *Conway v. Railroad*, 24 Mo. App. 238; *Leduke v. Railroad*, 4 Mo. App. 488.   (3) The fact of an injury and the possibility of guarding against it do not necessarily make out a case of culpable negligence. *Schroeder v. Car Co.*, 56 Mich. 134.   The plaintiff who avers must prove negligence.   *Smith v. Railroad*, 69 Mo. 37.   (4) The mill gearing appliances, belts, pulleys, shifting bar, pins, ropes and weight were constructed in the usual and customary way for construction of such machinery and the appliances for the running thereof, and were the same that had for years been used by defendants, and the same that all other manufacturers used, and that such construction and methods of operating said mill and appliances therefor were reasonably safe, and such construction and use thereof by defendant was not negligence.   Plaintiff's action is based solely on defective and unsafe construction of mill and its gearing and appliances for running it. Now defendants, having used a mill and appliances for running it constructed in the usual and customary

manner and reasonably safe, are not guilty of negligence. It is not the duty of defendants to furnish absolutely safe appliances. It is sufficient that the master furnish appliances that are reasonably safe. *Tabler v. Railroad*, 93 Mo. 84; *Muirhead v. Railroad*, 103 Mo. 251; *Porter v. Railroad*, 71 Mo. 76; *Hickey v. Taaffe*, 105 N. Y. 34. (5) When there is no conflict in the testimony, and all the causes contributing to produce an injury are known and unquestioned, whether a given act in the chain of causation is the remote or proximate cause of such an injury, is a question of law for the court. *Henry v. Railroad*, 76 Mo. 288; *Ashbrook v. Railroad*, 18 Mo. App. 290; *Hickey v. Taaffe*, 105 N. Y. 26. (6) The court erred in giving and refusing instructions.

*John W. Beebe* for respondent.

(1) There was abundant testimony showing that defendants were guilty of gross negligence, causing the injury, and that the plaintiff was free from contributory negligence. These questions were submitted to the jury in a series of instructions exceedingly favorable to the defendants. *Donahue v. Brown*, 27 N. E. Rep. 675; *Keegan v. Cavanaugh*, 62 Mo. 230; *Porter v. Railroad*, 60 Mo. 160; *Dale v. Railroad*, 63 Mo. 455; *Waldhier v. Railroad*, 87 Mo. 48; *Devlin v. Railroad*, 87 Mo. 545; *Long v. Railroad*, 65 Mo. 225; *Tabler v. Railroad*, 93 Mo. 79; *Bowen v. Railroad*, 95 Mo. 268; *Parsons v. Railroad*, 94 Mo. 286; *Huhn v. Railroad*, 92 Mo. 440. (2) The starting up of the machine under the circumstances (it having started two or three times before with the weight on the rope), and not from any cause operating in plaintiff's department, and beyond his vision and knowledge, of itself, without further proof on plaintiff's part, raise a presumption of

negligence, calling for proof on defendants' part that such unusual and dangerous movements occurred from causes for which they were not responsible; numerous authorities sustain this contention, and no authority has examined it *contra* when applied to the facts of the case. *Briggs v. Oliver*, 4 Hurl. & C. 403; *Byrne v. Boadle*, 2 Hurl. & C. 722; *Scott v. Dock Co.*, 3 Hurl. & C. 596; *White v. Railroad*, 144 Mass. 404; *Mullen v. St. John*, 57 N. Y. 567; *Bose v. Trans. Co.*, 20 Blatch. 411. (3) But in the case at bar plaintiff went further, and showed the defective condition of the gearing, and the insufficiency of the appliances furnished for preventing the machine from starting up, and brought home actual knowledge to the master of the dangerous condition of the appliances. (4) Defendants did not attempt to show that the starting up of the machine was from a cause beyond their control, and for which they would not be responsible. This they were bound to do, under the state of the proof, to exculpate themselves from the charge of negligence. Authorities cited *supra*. (5). The plaintiff was not guilty of contributory negligence. He had a right to rely on the assurance of the master mechanic, that the appliances to prevent the machine from running were safe. Relying upon that assurance, an attempt to remove an obstruction from the mill while it was at rest was not negligence nor evidence of it. (6) The instructions for the plaintiff properly declare the law of the case, and the verbal criticisms of counsel are without merit. The court committed no error in the admission of testimony.

BARCLAY, J.—Plaintiff recovered a judgment for personal injuries, which defendants have brought here for review.

It is unnecessary to quote the pleadings. The

general nature of the plaintiff's case is that his mishap
resulted from want of reasonable care as to the safety
of machinery furnished by defendants, in whose service
he was engaged. On the other side, defendants denied
all negligence on their part, and asserted contributory
negligence of the plaintiff.

The cause was tried with the aid of a jury, and a
verdict for plaintiff for $5,000 resulted.

I.   Plaintiff's injuries were serious, but they need
not be particularized. As defendants made no com-
plaint of excessive damages in their motion for a new
trial, that question cannot be considered open for
examination now. *Ridenhour v. Railroad* (1890), 102
Mo. 270.

II.   The first debatable point for attention arises
on the objection to the plaintiff's whole case. Defend-
ants insist that the court should have given the instruc-
tion in the nature of a demurrer to the evidence, as
requested. As the jury ultimately found for plaintiff,
our duty now, in considering this branch of the appeal,
merely extends to ascertaining whether the verdict has
substantial support in the testimony. It is not our
province to pass on the weight of conflicting evidence
in an action of this character; indeed, we have no con-
stitutional power to do so.

At the time of the accident, defendants were oper-
ating a large packing establishment at Kansas City,
Missouri. In one of its departments some of the
refuse from other parts of the establishment was
manufactured into fertilizing material. Among the
machinery applied to this purpose was a contrivance
for grinding cakes or masses of dried blood, called by
the witnesses a "blood mill." This instrument is the
object of complaint and investigation here, as it was in
the circuit court. We shall not attempt to picture
fully the details of this machine and of its operation.

In the view we take of the case it will not be necessary. We will merely state its general features that bear on the merits of the controversy.

The mill occupied a fixed position on the floor of a large room. Its base was a wooden frame, some three feet high, fifteen inches wide and about three feet long. Above this was an iron cylinder, arranged to revolve rapidly, filled with rows of teeth. Near that was a fixed iron plate, likewise filled with teeth, so placed as that those of the cylinder, when in motion, would run between them and thus form an effective cutting or grinding machine. The shaft of the cylinder was prolonged beyond the frame work and carried a wheel on which belting ran, communicating with motive power as explained further on.

Over the cutting machinery of the mill was a large hopper, extending nearly to the ceiling of the room and closed on all sides save one, left open for the admission of the material to be treated. The latter, after passing through the teeth, ran out upon a board, placed at an angle on the inside of the frame, from a point just below the fixed plate, to the floor.

Immediately above the room where this mill stood was one called the "lard room." Near the ceiling of the latter the machinery was placed which directly connected the shaft and belting that moved the "blood mill" with the general supply of steam power for the whole establishment. This connection was effected by means of a lever, a movement of which placed certain belting on a fixed or on a loose wheel, according as the operator desired. When this belting was shifted to the fixed wheel, the mill in the room below was put into motion. When the belting was shifted from the fixed to the loose wheel, direct communication with the steam power was cut off, and the mill stopped as soon as the momentum of its own particular gearing was exhausted,

which required (according to plaintiff's witnesses) about one minute when the mill was empty; less time, if there was material in it.

This lever was moved (as occasion might require in the use of the "blood mill") by means of two ropes fastened to it and running (through holes in the inter-vening floor) into the mill room. By pulling one of the ropes the lever would respond so as to throw the main belting upon the fixed pulley or wheel, and start the mill; and by pulling the other rope the lever could be shifted back again, so as to carry the belting upon the live or loose wheel, and stop the mill.

The ropes hung about four feet apart in the mill room, the free end of the lower one about three feet from the floor. They passed vertically through the lard room, from its floor to the lever overhead. An iron ball of some thirty-five or forty pounds weight was provided to be tied to either rope in the mill room, and by that pressure to keep the lever in the position desired. The lever and the shafting in the lard room were not visible from the mill room because of the intervening floor of the former.

The plaintiff had been in defendants' employ for some time before the "blood mill" was built. He had charge of the fertilizing department, including the room where this mill was. He was not a skilled mechanic, but had often seen machinery in establishments where he had worked. He had several men under his direc-tion in his department. At the time of the accident, one was Olsen, a Swede, who stopped the mill by order of plaintiff who had heard a noise within it as of some obstruction.

Pieces of iron and of bone occasionally got into the mill with the material to be ground. This necessitated stopping it and removing the obstruction. On this occasion plaintiff looked into the mill from the top of

the hopper after the charge or load was out, and it had stopped.   He saw that some teeth were bent, but could not discern the cause.   He then looked into the mill from below and discovered a nail that had become imbedded in the framework in a way to interfere with the grinding machinery.   While the latter was at rest, he put his hand between the teeth to extract the nail, when the machinery started up suddenly, caught his hand and inflicted injuries which made its amputation necessary.

The unexpected start of the mill is not ascribable to any movement of the rope in the mill room.   The evidence is that, after the mill had been stopped, no one disturbed the ropes there until after plaintiff's mishap.

Considerable expert evidence was given that, owing to the location of the fixed and loose pulleys, relative to the main belting in the lard room, that belting (connecting with the steam power) was liable to shift, temporarily, under certain conditions, from the loose to the dead pulley, sufficiently to impart motion, without any movement of the lever, designed to control such changes.

There was evidence that the mill had started on two or three former occasions without any appropriate movement of the ropes in the mill room; although plaintiff did not learn of that until after the accident.

In the lard room barrels and tierces of lard were placed, and employes of other departments frequently passed, handling these packages.   The barrels, when filled, weighed three hundred and eighty or three hundred and eighty-five pounds.   There was no obstacle to prevent their striking the ropes if they were rolled that way; and in that part of the lard room it was quite dark.   Expert machinists testified that the resistance afforded by the forty-pound weight on the rope in the

mill room would be overcome by a full lard barrel, rolling squarely against the rope in the room above.

Plaintiff testified that, when the mill was first made ready, defendant's master mechanic (under whose direction it was constructed) instructed him as to its use.

His account of this interview is this:

"*Q.* How did he show you? *A.* He says: 'Here is your blood grinder, now.' I says: 'Is it all right?' He says: 'Yes, she is all right; you take her.' He says: 'You pull this rope to stop her and this rope to start her.' And there was an iron weight there, and he said to pull it down, to that weight, and I held the rope while he tied a knot in the rope so the weight would pull it down, and that stopped it. And he started it and ran it for me probably a half dozen times, and showed me how to start and stop the machine. Then we got the blood in there and I staid there and ran it."

The foregoing is the substance of plaintiff's case, and the most important question before us is that which arises on defendants' objection to its general merits.

It is claimed that the court erred in denying the instruction for a nonsuit.

It will be observed that plaintiff was unable to specifically assign a cause for the sudden movement of the machinery. Several probable explanations of its action, based on principles of mechanics, were advanced; but they fell short of accounting for it definitely. Nevertheless the fact remains that, while the ropes (which the master mechanic had indicated as the efficient means to start or stop the machine) were in the position proper to keep it at rest, it began to move without apparent cause. Plaintiff had no knowledge or notice that the machine would do this, and it was

contrary to what his superior had told him respecting its mode of action.

It is familiar law, and need here be expressed but briefly, that the master is not bound to supply the latest, or the best machinery or appliances for the work he undertakes; still less does he insure his employe's safety. His obligation, in this relation, is to use such care as should characterize a person of common prudence, in the same position, that such machinery as is furnished be reasonably safe for the purpose to which it is intended to be devoted.

The mere fact of an injury to plaintiff does not necessarily create a liability or warrant an inference of defendants' negligence. The burden of proof was on plaintiff to establish, directly or by just inference, some want of care to which his injury might fairly and reasonably be traced.

But some catastrophes are of a nature such as carry, in a mere statement of their occurrence, an implication of some neglect. In such event "the thing itself speaks," as some judges have expressed it; often in Latin, though the idea is none the less forcible or clear in our mother tongue. *Byrne v. Boadle* (1863), 2 H. & C. (Exch.) 725; *Briggs v. Oliver* (1866), 4 H. & C. (Exch.) 407.

Thus it was held in *Mooney v. Lumber Co.* (1891), 154 Mass. 407, that the starting, without apparent cause, of the carriage of a sawing machine, when left at rest, with "the lever locked which was used to start and stop it," whereby the plaintiff was injured, constituted evidence to support a finding that there was negligence in the construction or condition of the machine with reference to its reasonable safety. *Donahue v. Brown* (1891), 154 Mass. 21.

Many other illustrations might be cited were it necessary. The principle that underlies them is that

negligence, like any ultimate fact in issue, may be established as well by reasonable inferences from other facts as by more direct means of proof. *Barnowski v. Helson* (1891), 89 Mich. 523.

It is sometimes a close question to determine what inferences from facts may reasonably be drawn; but it is enough for our present purpose to say that we are of opinion that where such a machine as this starts into motion, entirely out of the usual manner of its operation, as shown in the case at bar, its action affords *prima facie* evidence of some want of care in its original construction or then condition, calling for explanation from the party responsible therefor.

III. Nor can it be justly held that the likelihood of such a performance on the part of machinery necessary for his use was one of the ordinary risks of the employment which plaintiff had voluntarily assumed.

In *Gibson v. Railroad* (1870), 46 Mo. 163, this court unanimously declared that an employe "assumes the risk, more or less hazardous, of the service in which he is engaged; but he has a right to presume that all proper attention shall be given to his safety, and that he shall not be carelessly and needlessly exposed to risks not necessarily resulting from his occupation, and which might be prevented by ordinary care and precaution on the part of his employer." That declaration is better recognized in the law to-day, than at the time it was made.

An express contract, in most solemn form, by an employe, exempting his master from liability for negligence in the performance of his personal duties toward the former, has been often declared in American courts illegal, its subject-matter being considered as contrary to a sound public policy. *Railroad v. Spangler* (1886), 44 Ohio St. 471; *Roesner v. Hermann* (1881), 10 Biss.

486; *Railroad v. Eubanks* (1887), 48 Ark. 460; *Hissong v. Railroad* (1891), 91 Ala. 514.

For stronger reason such a contract for exemption cannot be carried by implication into an ordinary unwritten agreement for service.

The "usual risks" which the servant is justly regarded as having assumed by reason of his entry into service are certainly not those arising from a neglect to furnish reasonably safe appliances for the work, where the employe is (as here) entirely unaware of the danger so created. *Myers v. Iron Co.* (1889), 150 Mass. 125; *Abel v. President* (1891), 128 N. Y. 662; *Dorsey v. Construction Co.* (1877), 42 Wis. 597.

IV. We are also of opinion that the question of plaintiff's own exercise of common prudence in the circumstances was one for the determination of the jury. The master mechanic had told him that, when the ropes were in a given position, with the weight holding down a certain one of them, the mill would stop. It had often been stopped without any indication to plaintiff of danger.

He and Olsen, the Swede, who was an eye-witness to the accident, both testified positively that the machine was at rest when plaintiff attempted to extract the nail which obstructed its free action. Its location was such that he had to insert his hand into the machine to reach the nail, unless (to use his language) "you went and got some mechanics to come and pull the whole thing down."

In determining whether plaintiff exhibited ordinary care in the situation in which he is found in the case before us, we should, with the other facts, consider the exigency of his duty as a faithful employe, and the confidence he might fairly entertain (in the absence of knowledge or notice to the contrary) that the master's

personal obligation, in respect to the machinery before him, had been met.   He had the right to assume, in such circumstances, that the machine would not start into motion without a movement of the rope, indicated by the master mechanic as necessary to make it do so.

In view of all the facts we do not think it can fairly be declared, as a necessary inference of law, that his act in placing his hand within the machine to extract the nail, as he did, falls below a just standard of ordinary prudence.   We could properly so pronounce it only if, in our judgment, no other conclusion could reasonably be drawn from the facts in evidence.

V.   Some complaint is made touching rulings upon particular instructions.

The court gave twenty-three in all; six for the plaintiff; fourteen for the defendants as asked, and three more with some modifications.   It declined to give eight others requested by defendants.   Many of the instructions given are lengthy.   It would extend this opinion beyond reasonable limits to quote them.

We think it timely to repeat that the practice of multiplying instructions to such an extent, in cases of this sort, is not to be commended.   However correctly such a multitude of them may be drawn, there is great danger that the jury will be bewildered, not aided by their use.   The prime object of instructions is not to test the accuracy of the circuit judge in passing upon them, but to afford the average layman of the jury a clear and plain view of the legal principles, applicable to the case, by which he may be guided to a just result.   That is their true purpose.   Trial judges should insist that it be kept in view.   That important part of the proceedings on the circuit should not be allowed to degenerate into a mere wrestle for advantage on an appeal.   Happily, the discriminating care of the learned

judge who tried the present case enabled him to avoid error in ruling upon the numerous instructions presented.

We have given the whole series careful examination. They are consistent with the principles of law hereinbefore stated; or, at least, contain no departure therefrom disadvantageous to the defendants. Reading them together, we fail to see any merit in the various objections urged to particular phases . of them. It is not claimed that there is any conflict in the principles they declare; and, after reviewing them, with the objections to each before us, we find nothing in them of which defendants can justly complain.

VI.    Some minor questions have been raised, touching certain points of procedure at the trial, but we do not regard the defendants' assignments of error concerning them as well founded, or as calling for further remark.

The judgment should be affirmed. It is so ordered, with the concurrence of all the judges of this division.