## EDWARD N. MARTINEAU *vs.* NATIONAL BLANK BOOK COMPANY.

Hampden.    January 16, 1896. — April 13, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Defective Machine — Due Care — Negligence — Assumption of Risk — Law and Fact — Instructions.*

It is not a want of due care on the part of a servant, who has been requested to repair a machine which is out of order and with which he is acquainted, to attempt to repair it; and, in an action against his master for personal injuries received while so repairing the machine, the jury are not bound to find that he was careless because several witnesses testified that he said the accident was his own fault.

In an action for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the unexpected starting of a machine which he was attempting to repair, and which was run by a belt from an overhead shaft, there being both a loose and a tight pulley for the belt, there was evidence tending to show that, owing to the defects in the belt and in the driving pulley over which it ran on the overhead shaft, the belt had a tendency when running on the loose pulley to tick the tight pulley, and to creep from the loose to the tight pulley, to such an extent as to communicate the power of the overhead shaft to the machine, and to put in motion the fly wheel, the momentum of which kept power on the speed shaft after the belt was on the loose pulley. *Held*, that it could not be said, as matter of law, that the plaintiff was careless in attempting to repair the machine without first taking the belt entirely off.

Although, if a servant is asked generally to examine a machine, and to repair it if he can, the master is not at fault as to him by reason of any defect or danger connected with the whole apparatus, yet, if the servant is asked only to repair a specific part of the mechanism, it may be the master's duty to warn him of a danger not apparent, and due to the improper working of some part of the apparatus distinct from that part which he is asked to repair.

No exception lies to the refusal of the judge presiding at a trial to give instructions in the terms requested, if to have given them would have been in effect to charge the jury upon facts which were in dispute, and which were for the jury.

If a servant is employed to repair a defective machine, not in a safe and suitable condition for use, the master is not required to have it in a safe condition so far as his duty to that servant is concerned, and, if the latter is told that the machine is out of repair and is requested to repair it, he impliedly contracts to take the obvious risks from the condition in which the machine then is.

If, while a workman is engaged in repairing a machine run by a belt from an overhead shaft, it starts suddenly and he is injured, and if he set the machine in motion by touching some of its mechanism, or it started in consequence of power communicated by him to any part of it, or its starting was on account of a defect in some of its parts or a lack of juxtaposition between them, no such

starting will prevent his maintaining an action against his employer, if his injury was not due to the starting of the machine, but to the fact that, without his knowledge and contrary to his reasonable expectation, the power of the overhead shaft was on.

If the principles of the doctrine, that a servant is precluded from recovering against his master where he was not in the exercise of due care, and where he had assumed the risk of injury, were stated correctly, and in such a way as to enable the jury to apply them intelligently to what from the conflicting evidence in the case they should find to be the facts, the defendant cannot complain that they were not applied in detail by the judge to a particular state of facts which might or might not be found by the jury.

TORT, for personal injuries received by the plaintiff while in the defendant's employ. At the trial in the Superior Court, before *Gaskill*, J., the jury returned a verdict for the plaintiff: and the defendant alleged exceptions. The facts appear in the opinion.

*J. B. Carroll & W. H. McClintock*, for the defendant.

*W. H. Brooks & W. Hamilton*, for the plaintiff.

BARKER, J.   The plaintiff was hurt in a blank book factory by the unexpected starting of a machine, run by a belt from an overhead shaft, used for trimming paper and cardboard. The material to be trimmed rested upon a table made in two sections, above which was a clamp, weighing about two hundred and fifty pounds, used to hold the material firmly in place. . A heavy knife about thirty-four inches long, forced upward from beneath the table and between its sections, trimmed the material. The clamp was carried upon perpendicular rods, two at each end, so arranged in connection with geared wheels near the floor at each end of the machine that the clamp rose and fell as the wheels revolved. When in order, the machine would stop automatically with the clamp up and the knife down, after each cut of the knife. The automatic appliances, and also the mechanism by which the operator could start and stop the machine at will, were at the right hand end of the machine, within its iron frame, while the clamp rods and the geared wheel at that end were just outside the frame. At the same end there was an opening through the frame behind the wheel, and the wheel was made with four arms, so that a person could reach through the wheel and frame and manipulate the mechanism within the frame.

Shortly before the plaintiff's injury, the machine was out of order, and would not uniformly stop automatically, the knife

and clamp sometimes going up and down until the machine was stopped by the operator. It could be so stopped, either with the hand or foot, by moving a lever on which were both a handle and a foot piece, just within the frame.

The plaintiff was not a machinist by trade, and his work was neither the operation of the machine nor the repairing of machinery. He worked, however, in the same room, was acquainted with the machine, had repaired it twice, and he had considerable mechanical skill. After several requests he left his own work and attempted to repair the machine. While he was at the right hand end of the machine at work, with his right arm through the geared wheel and his right hand on the inner face of the wheel, the machine unexpectedly started, the clamp suddenly went down, the geared wheel revolved, and caught his right arm between the inner edges of the rim and the arm or spoke of the wheel and the perpendicular rods.

The plaintiff's contention was that he was not asked to see what was the matter with the machine, and to repair it if he could, but that he was told, in substance, that it did not " knock out right," which we understand to mean that the automatic action did not work properly, and that he was merely asked to go and " fix the dog and clip." These were parts of the mechanism which came into play in starting and stopping the machine, both automatically or by means of the lever, and they were at the right hand end of the machine. The clip was held by screws or bolts against the inner face of the geared wheel which carried the clamp rods on that end, and the dog was so placed within the frame as to be engaged with or separated from the clip by the lever. At the other end of the machine were a loose and a tight pulley for the belt from the overhead shaft. When the belt was on the loose pulley, no power was communicated from the overhead shaft; when the belt was on the tight pulley, the power was communicated to the machine and transmitted by shafts under the table to the knife and clamp. On one of these shafts were clutches, regulated by the lever which engaged and disengaged the dog and clip, and also operated a rocker shaft which engaged and disengaged the clutches. When power was on and the clutches were suitably placed, power was transmitted to the knife and clamp; but the clutches could be so placed that

neither the knife nor the clamp or its supporting rods and geared wheels could move, even when the power of the overhead shaft was on the tight pulley and the fly wheel, and on the speed or power shaft. When all the parts of the machine were in order, it was impossible for the clamp to go down or the knife to come up, if the dog was engaged with the clip. The perpendicular rods which carried the clamp were attached by crank-like fastenings to the geared wheels at the ends of the machine, so as slowly to raise and lower the clamp when the wheels revolved. When the clamp was at its highest point, if the machine was properly adjusted, those fastenings stood directly over the perpendicular axis of the shaft which carried the wheels; and in that position the weight of the clamp had no tendency to make the wheels turn. But if when the clamp was up the fastenings were not directly over the axis, the weight of the clamp tended to turn the wheels, but with how much force was in dispute. When the machine was properly adjusted, it stopped automatically, with the knife beneath the table and the clamp at its highest point, and with the crank-like fastenings perpendicular or over the centre.

There was evidence tending to show that on the day of the accident the clamp rods were off centre, so that when the clamp was up its weight tended to turn the wheels to which the rods were attached, and that a slight force applied to one of the wheels would be sufficient to stop them if turned only by the weight of the clamp; but if the power from the overhead shaft was on them, the wheels would turn with great force. There was also evidence tending to show that, owing to the defects in the belt and in the driving pulley over which it ran on the overhead shaft, the belt had a tendency when running on the loose pulley to tick the tight pulley, and to creep from the loose to the tight pulley, to such an extent as to communicate the power of the overhead shaft to the machine, and to put in motion the fly wheel, the momentum of which kept power on the speed shaft after the belt was on the loose pulley. The plaintiff contended that this tendency of the belt to tick the tight pulley and to creep upon it was unknown to him, that he had no reason to know it, and that the defendant ought to have known it, and ought to have warned him of the danger to which

that tendency might expose him if he attempted to repair the machine with the belt running on the loose pulley.

The testimony given at the trial is stated in full in the bill of exceptions, and is very voluminous and conflicting. As many of the witnesses testified with parts of the machinery, or with photographs or drawings before them, to which they often referred, it is difficult for us to feel that we always get the exact meaning of the witnesses. We understand, however, that it would have been competent for the jury to find, either that the plaintiff was asked generally to see what was the matter with the machine and to " fix " it if he could, or that he was told that it did not " knock out right," and was asked merely " to fix the dog and clip " ; that before beginning to handle the mechanism he caused the belt to be run on to the loose pulley and the fly wheel to be stopped ; or that he was at work manipulating the dog and clip with the belt on the tight pulley, and the machine in such a condition that if the dog and clip should be disengaged the power of the overhead shaft would at once be felt on the wheel through which his arm was placed ; that in placing himself at the end of the machine, and in attempting to work with his arm through the wheel, he selected the best position in which to do his work, or that, in so doing, he unnecessarily selected a dangerous position ; and that the unexpected starting of the machine was due either to the plaintiff's unintentional moving of the dog, the lever, or the rocker shaft, or to some jar in the room, or other cause for which he was not responsible, and which operated in connection with the unexpected application of power by the creeping of the belt upon the tight pulley.

Such of the exceptions as relate to the reception or exclusion of evidence are not argued upon the defendant's brief, and we regard them as waived. There were two counts in the declaration, one under the St. of 1887, c. 270, and the other at common law. Only a portion of the charge to the jury is given, and that portion relates chiefly to the common law count. The instructions stated to have been asked by the defendant, and not given, except as dealt with in that part of the charge reported, would apply to either count ; but the bill of exceptions also states that the court gave sufficient and appropriate instructions, to which no exception was taken, upon the various questions

involved in the case and not specifically stated in the bill.   If therefore, the rulings stated to have been given correctly and sufficiently dealt with the different aspects of the evidence as applied to the common law count, no error is shown.

The evidence bearing upon the questions involved was so conflicting that the presiding justice could not properly instruct the jury either that the plaintiff was negligent, or that he assumed all the risks, or that the defendant was guilty of no fault.*

It was not a want of due care on the part of the plaintiff to attempt to repair the machine.   The jury was not bound to find that he was careless because several witnesses testified that he

---

* The instructions requested were as follows:

"1. Upon the whole evidence, the plaintiff is not entitled to recover. 2. Upon the whole evidence, the plaintiff was not in the exercise of due care.   3. Upon the whole evidence, the plaintiff is not entitled to recover, because he assumed the risk of the accident which happened to him. 4. Upon the whole evidence, the plaintiff is not entitled to recover, because there is no evidence of any breach of duty which the defendant owed to the plaintiff which caused the injury to the plaintiff.   5. If the machine was out of repair, and the plaintiff undertook to discover what was the matter with the machine, and was injured while so engaged upon the machine, the plaintiff is not entitled to recover.   6. If the plaintiff undertook to repair said machine, and while so engaged in repairing said machine the plaintiff himself, by touching the dog, gear wheel, or rocker shaft, set the machine in motion, and thereby suffered injury, the plaintiff cannot recover.   7. If the plaintiff undertook to repair said machine, and while so engaged in repairing said machine he was injured by reason of said machine starting in consequence of any power communicated by him to any part of said machine, the plaintiff cannot recover.   8. If the plaintiff undertook to repair the dog or clip of said machine, and while so engaged was injured by reason of the starting of said machine, on account of any defect in the dog or clip or any lack of juxtaposition between the dog and the clip, the plaintiff cannot recover. 10. The defendant was not guilty of any breach of duty or negligence toward the plaintiff in maintaining the machine in the condition in which it was, and the plaintiff cannot recover.   11. If the plaintiff knew and understood the condition of the machine, with whatever defects there may have been attendant thereon, the defendant was guilty of no negligence or breach of duty towards the plaintiff in maintaining said machine in said condition, and the plaintiff is not entitled to recover.   12. Upon the evidence, the plaintiff was not entitled to any instructions regarding the dangers of the work which he was doing at the time of his injury.   13. The fact that the clamp rod was off centre is not a defect of which the plaintiff can complain, and it is not to be considered in determining the question of the liability of the defendant."

said the accident was his own fault. We cannot say that, as matter of law, the plaintiff was careless in attempting to repair the machine without first taking the belt entirely off. It was in dispute whether he worked upon the repairs knowing that the power was on, or supposing that by the running of the belt on to the loose pulley and the stopping of the fly wheel the power had been taken off, and would remain off; it was in dispute whether he worked in a needlessly dangerous position, or one proper and suitable for the work in hand ; and it was also in dispute whether the wheel which caught his arm was set in motion by the plaintiff's own act, or by some jar due to other work going on in the room, or other cause for which he was not responsible. There was contradictory evidence, from which the jury might have found that, if he had himself set in motion the wheel which caught his arm, the wheel could not have moved with sufficient force to hurt his arm if the belt had not crept upon the tight pulley. Whether he assumed all the risk depended upon whether he undertook generally to repair the machine, or only certain parts of it ; and here too the evidence was conflicting. Assuming that, if the plaintiff was asked generally to examine the machine, and to repair it if he could, the defendant was not at fault as to the plaintiff by reason of any defect or danger connected with the whole apparatus, yet, if the plaintiff was asked only to repair a specific part of the mechanism, it might be the defendant's duty to warn him of a danger not apparent, and due to the improper working of some part of the apparatus distinct from that which he was asked to repair; as, for instance, to the creeping of the belt from the loose to the tight pulley. *Donahue* v. *Drown*, 154 Mass. 21.

These considerations require us to overrule the exceptions to the refusal to give in terms the first, second, third, fourth, and the tenth, eleventh, and twelfth rulings requested. To have given these in terms would have been in effect to charge upon facts which were in dispute, and which were for the jury.

The fifth request was in effect that, if the machine was out of repair, and the plaintiff undertook to discover what was the matter with it and was injured while so engaged, he could not recover. We regard it as given in substance in those portions of the charge in which the jury were told that, if the servant is

employed to repair a defective piece of machinery not in a safe and suitable condition for use, the law does not require the master to have it in a safe condition so far as his duty to that servant is concerned; and that, if the plaintiff was told that the machine was out of repair and was asked to go and repair it, then he impliedly contracted to take the obvious risks from the condition in which the machine was. The same portions of the charge sufficiently covered the subject of the tenth request, which was to the effect that the defendant was not at fault toward the plaintiff in maintaining the machine in the condition in which it was.

The sixth, seventh, and eighth requests were objectionable, because the rulings requested in them would have been misleading, and on this account they were rightly refused. They have a common point of view, each regarding the starting of the machine as the cause of the injury. The sixth request is to the effect that, if the plaintiff set the machine in motion by touching the dog, gear wheel, or rocker shaft, he cannot recover; the seventh, that if the machine started in consequence of any power communicated by him to any part of it, he cannot recover; and the eighth, that, if it started on account of any defect in the dog or clip, or lack of juxtaposition between them, he cannot recover. But if the plaintiff set the machine in motion by touching the dog, gear wheel, or rocker shaft, or the machine started in consequence of power communicated by him to any part of it, or its starting was on account of a defect in the dog or clip, or a lack of juxtaposition between them, no such starting of the machine would prevent the plaintiff's recovery, if his injury was not due to the starting of the machine, but to the fact that, without his knowledge and contrary to his reasonable expectation, the power of the overhead shaft was on. The jury might find from the evidence that, if the power had been off, all that could have happened upon the starting of the machine from any of the causes mentioned in these requests would have been the fall of the clamp and the turning of the wheel by the weight of the clamp alone, and that the wheel would have moved with so little force that no harm could have been done to the plaintiff. In that case, while he would not have been hurt if the machine had not started, its starting was not the thing to which his hurt was due, and the jury could find

that in the exercise of ordinary care he was justified in believing that the power was not on, and in acting as if it were not on. The starting of the machine by the plaintiff, or from any of the causes mentioned in these requests, would then be a matter which would not prevent the plaintiff from recovering, for he might have started it without negligence, and he might be found not to have assumed the risk of the injury which ensued, and which he had no reason to expect would happen. The jury could find that the plaintiff lost his arm, not because the machine started, but because, when it started, a power without which the starting would have done no harm operated because of something which he was not bound to anticipate or guard himself against, and which the jury could find was due to the defendant's fault, namely, the creeping of the belt.

All the matters dealt with in these three requests were matters bearing upon the questions whether the plaintiff was precluded from recovering because he was not in the exercise of due care or because he had assumed the risk of injury. If the principles of those doctrines were stated correctly, and in such a way as to enable the jury to apply them intelligently to what from the conflicting evidence they should find to be the facts, the defendant cannot complain that they were not applied in detail by the court to a particular state of facts which might or might not be found by the jury.

If we assume in favor of the defendant that it was not in dispute that the danger that the weight of the clamp might start the gear wheel because the rods were off centre was obvious, so that the plaintiff must be held to have taken the risk of it, this was the only matter to which the requests might be construed to relate, — which was not in dispute. There was a special request, the thirteenth, relating to it, and this was given in substance at the conclusion of the charge. Taken in connection with the particular ruling so given, we think the charge correctly and sufficiently instructed the jury upon this branch of the case. There is no contention that they were not sufficiently and correctly instructed as to due care and negligence. Upon the question whether the plaintiff was precluded from recovering by having accepted the risk, the jury were instructed that the plaintiff assumed the risk incident to the condition in which he

was informed that the machine was, and that a workman assumes the dangers of the employment to which he voluntarily and intelligently assents; and, with more particularity, that if the request or the information was that the machine was out of repair and for the plaintiff to go and repair it, he impliedly contracted to take the obvious risks of the condition in which the machine was when he agreed to repair it. This was all that the defendant could demand upon this branch of the case.

The ninth request is not stated in the bill of exceptions, and we assume that it was given, or that it is not material to the questions argued. We have seen that the tenth, eleventh, and twelfth requests were properly denied, and, in connection with the fifth request, that the question of law to which the tenth was directed was properly dealt with in the charge.

The eleventh request, while purporting to deal with the defendant's duty, or breach of duty, in having the machine in the condition in which it was, looked in effect to the same aspect of the case as the fifth request, and did not make it obligatory upon the presiding justice to do more than to state correctly the principles of law governing the defendant's obligation to the plaintiff.

As we have already seen, the twelfth request was properly denied, because there was an aspect of the evidence in which it was the defendant's duty to warn the plaintiff of the danger which might result from the creeping of the belt, and the law which should apply to the question was correctly stated in the charge.

We think that the instructions given sufficiently and correctly laid down the law upon the matters embraced in the requests which were not given. Upon consideration of all the evidence, it seems to us correct to say, as the jury in effect were instructed, that practically, after settling the questions of due care, the determination of the case depended upon whether the statement and the request to the plaintiff were general, and upon the cause which set the machine in motion. The instructions covered correctly the question of what due care required of the plaintiff and of the defendant, the obligation of the defendant as to giving warning, and the law as to the risks assumed by the plaintiff.       *Exceptions overruled.*