LOUIS M. PACKER *vs.* THOMSON-HOUSTON ELECTRIC
COMPANY.

Essex.   January 8, 9, 1900. — March 3, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Defective Machine — Assumption of Risk — Evidence — Negligence — Trial — Instructions.*

If experienced experts testify for the defendant in an action for personal injuries that a certain movement of a machine which caused the injury was impossible, the plaintiff cannot be said, as matter of law, to have assumed the risk of its happening.

If a question to a witness is objected to, no reason being given for the objection, and an exception taken, and no objection is made to the answer, a ground for the objection being taken in this court which was not taken at the trial nor in any way called to the judge's attention, the question itself not being objectionable, and no motion being made then or afterwards to strike out the answer, the exception will be overruled.

Evidence that a machine, which was so constructed that it would not repeat its movement without coming to a full stop or start from a full stop, if it were in order, was out of order and not safe to run, that it started from a full stop after it had repeated, and that the repeating was reported by the person who was employed on the machine and was injured by such movement, will warrant a finding of negligence on the part of the employer in an action for the injury.

It is not the duty of the judge presiding at a trial to select the undisputed facts in

the case and state to the jury what their verdict should be upon those facts, unless the disputed facts are immaterial to the issue.

In an action for personal injuries caused by an alleged defective machine, A., who examined the machine soon after the accident, testified that he found several specified defects in it; that, taking the condition in which he found it, he should say that it was an unfit machine to be used just then; and that "it was not safe to run it, as it would not stop at every revolution." The defendant's witnesses testified that these defects would not cause the machine to start from a full stop, but there was evidence that the machine with these defects did so start, and caused the injury. *Held,* that the jury could not properly be instructed that "if the defects in the machine, as ascertained and described by A., were all that existed at the time of the accident, the plaintiff cannot recover."

TORT, for personal injuries sustained by the plaintiff, through the alleged negligence of the defendant, while in its employ. At the trial in the Superior Court, before *Sherman,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*R. M. Morse & J. M. B. Churchill,* (*J. Duff* with them,) for the defendant.

*C. W. Bartlett & E. R. Anderson,* for the plaintiff.

LATHROP, J. The machine on which the plaintiff was injured is what is known as a Cranston and Jones undercut machine, which is so fully described in *Martineau* v. *National Blank Book Co.* 166 Mass. 4, that we do not consider it necessary to describe it again at length. It is enough to say that above a steel table were two shafts, in the grooves of which ran a clamp. Underneath the table was a knife. Both the clamp and the knife were worked by machinery. Power was applied by means of a shipper, and two motions were required to set the machinery in motion : one a motion to the right, and then a downward motion. The object of the two motions was to prevent the application of power by the accidental pressure of the body of the person operating the machine upon the shipper. The machine was so constructed that when in proper working order it would make but one cut, and then stop, and the shipper would come back into place.

On the morning of the accident, May 11, 1895, the plaintiff was at work on the machine, cutting elastic braid, which was explained at the argument to mean braid to be used in insulating wire. When the machine was to be used for cutting paper, cardboard, or other stiff material, it was pushed from the rear of

the machine, by a helper, over the knife which was then below the table, and the person operating the machine would then pull it along, until the required length was reached, the power was then applied and the cut made. In the case of elastic braid, however, there was evidence that this could not be done ; and that the recognized way in the defendant's factory was for the operator to put his hands between the uprights and draw the braid towards him. This evidence came not only from the plaintiff but from two other men who had worked on the machine. There was contradictory evidence on this point, but the question was for the jury. While the plaintiff was drawing the braid through, after having made a cut, there was evidence that the machine started from a dead stop, the clamp came down, and the knife arose and cut off both his arms below the elbow.

The principal question in the case arises on the refusal of the judge below at the close of the evidence to direct the jury to return a verdict for the defendant.

At the argument before us the counsel for the defendant conceded that there was evidence for the jury on the question of due care on the part of the plaintiff ; but it was contended that the plaintiff assumed the risk. On this point there was evidence that on the morning of the accident the machine had repeated several times ; that is, that, instead of stopping after one revolution, the clamp would come down, the knife ascend, and so on for a number of times. This the plaintiff knew, and he testified that he reported it. No one was called to contradict him on this point. It is evident that if he had attempted to put his arms between the uprights while the machine was repeating, there could be no question of his assuming the risk. But there was evidence for the jury that the plaintiff did not know that the machine could start from a dead stop. In fact the chief effort of the defence was to show by experts that, although the machine, in the condition it was in immediately after the accident would repeat, it was impossible for it to start from a dead stop. Some of these experts were men of great experience, both theoretically and practically ; and if they pronounced a thing to be impossible, we do not see how the plaintiff can be said, as matter of law, to have assumed the risk of its happening. See *Donahue* v. *Drown*, 154 Mass. 21.

The next question is whether there was any evidence of negligence on the part of the defendant. Bearing on this is the question of the admissibility of a question put to one Graham, who had previously worked on the machine. He testified that he made an examination of the machine in 1893. He was then asked : " Immediately after this examination . . . what did you see the machine do?" The question was objected to, and the defendant took an exception. The witness answered : " Well, I did n't see it do much of anything for a minute or so, and then I saw it start from a stop." No objection was made to the answer ; nor was any reason given for the objection. The defendant now contends that the condition of the machine was different at the time of the accident from its condition in 1893. The only difference relied on is that in 1894, the friction strap broke, and the defendant manufactured a new one, which the experts for the plaintiff thought was not so good as the old strap, and the experts for the defendant thought was as good as the old, or better. No such objection as is now made was made at the trial, nor was the judge's attention in any way called to it. The question itself was not objectionable, and no motion was made then or afterwards to strike out the answer. We are of opinion that this exception must be overruled. Graham testified, without objection, that he reported the fact that the machine repeated and started from a stop to the foreman in charge of the shop ; and the foreman was not called to contradict him.

There can be no doubt that there was evidence of the defendant's negligence. There was certainly evidence that the machine started from a stop, after it repeated, and that the repeating was reported by the plaintiff. There was also evidence that the machine was so constructed that it would not repeat or start from a dead stop, if it were in order, and there was evidence that it was out of order, and not safe to run. Whether or not the defects which were found were sufficient to start the machine from a dead stop was a question for the jury. The jury were instructed that the plaintiff could not recover unless he proved that the machine started of itself from a full stop. As they found for the plaintiff, they must have found that it did so start. The jury may well have found evidence of negligence on the part of the defendant. *Donahue* v. *Drown*, 154 Mass. 21. *Mooney* v. *Con-*

*necticut River Lumber Co.* 154 Mass. 407.    *Connors* v. *Durite Manuf. Co.* 156 Mass. 163.

It remains to consider certain requests made by the defendant which the judge refused to give, and which were insisted upon at the argument.    These are the first, second, third, and seventh.

The first, second, and third may be considered together.    These are as follows : " 1.    There is no dispute that if the counterbalance weight is in its proper position it will keep the shipping lever from falling to the right, and causing the clutch to engage with the coil."    " 2.    It is not claimed that the machine could have started itself at the time of this accident unless the counterbalance weight was out of position so as not to be able to perform its proper function."    " 3.    There is no evidence that at the time of the accident this counterbalance weight was so out of position."

We are of opinion that these instructions were properly refused.    The plaintiff did not concede the assumption of either the first or second request.    But even if the fact assumed was not disputed, it was not the duty of the court " to select the undisputed facts in the case, and state to the jury what their verdict should be upon those facts, unless the disputed facts were immaterial to the issue."    *Kellogg* v. *Tompson*, 142 Mass. 76, 80.    See also *Hannah* v. *Connecticut River Railroad*, 154 Mass. 529, 534.

The seventh request was this : " If the defects in the machine, as ascertained and described by Weiss, were all that existed at the time of the accident, the plaintiff cannot recover."    Weiss was a witness for the plaintiff, and examined the machine soon after the accident.    He testified that he found that the friction strap was improperly constructed ; that the two screws in the shipper bracket were loose ; and that the end of the clutch spring was worn.    He also testified as follows : " Taking the condition I found this machine in, I should say it was an unfit machine to be used just then.    Of course it was not safe to run it, as it would not stop at every revolution."    Although the defendant's witnesses testified that these defects would not cause the machine to start from a full stop, yet as there was evidence that the machine with these defects did so start, the instructions requested could not properly be given.

*Exceptions overruled.*