## IDA FOUNTAINE *vs*. WAMPANOAG MILLS.

Bristol.    October 24, 1905. — November 28, 1905.

Present: KNOWLTON, C. J., LATHROP, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Employer's liability.    *Evidence*, Collateral issues: remoteness.

In an action by a spinner in a cotton mill against her employer, for personal injuries caused by the machine on which she was at work starting of itself while she was cleaning its gears, after the plaintiff has testified that while she was at work in the spinning room a machine like that by which she was injured had started up when no one was working on it, there is no error in excluding further evidence offered by her to show that this was a machine similar to the one by which she was injured and was one of those which she was tending, and that she called the attention of the person in charge of it, this evidence not being competent to show a defect in the machine which injured the plaintiff or negligence of the defendant in regard to it, it not appearing that the conditions of the two machines were the same.

In an action by a spinner in a cotton mill against her employer, for personal injuries caused by the machine on which she was at work starting of itself while she was cleaning its gears, if the evidence warrants a jury in finding that the machine started of itself, that its starting was due to a defect in the condition and arrangement of the belt and to a worn out and defective condition of the shipper and its bolts and nuts, and that the defendant had had sufficient notice of the existence of these defects to have enabled it to remove them by repairing the machine, the plaintiff is entitled to have her case go to the jury, and the jury properly may find that in the exercise of due care the defendant ought to have repaired the machine and that the accident was due to its negligence in failing to do so.

In an action by a spinner in a cotton mill against her employer, for personal injuries caused by the machine on which she was at work starting of itself while she was cleaning its gears, if it appears that at the time of the accident the plaintiff was performing the work she was employed to do and in the proper way, and that she had no duty of taking care of the shifting apparatus, she may be found to have been in the exercise of due care although she previously had seen another machine in the same room start up when no one was working on it, especially where evidence in regard to the circumstances of the former starting up of the other machine has been excluded upon the defendant's objection, and where the defendant has contended that the machine starting of itself was so improbable that it could not have been foreseen.

TORT for the loss of a finger of the plaintiff's left hand from its being caught in the gears of a spinning frame upon which the plaintiff was at work in the spinning room of one of the cotton mills of the defendant at Fall River.    Writ dated October 6, 1902.

At the trial in the Superior Court *Harris*, J. at the close of the evidence ruled that upon all the evidence the plaintiff could not recover, and ordered a verdict for the defendant, saying that he made the ruling on the ground that there seemed to him to be no sufficient evidence of negligence of the defendant. The plaintiff alleged exceptions.

*C. R. Cummings*, for the plaintiff.

*R. P. Borden*, (*R. C. Davis* with him,) for the defendant.

SHELDON, J.   The plaintiff was employed by the defendant as a ring-spinner, and was injured while engaged in cleaning certain exposed gears on one end of the spinning frame upon which she was at work.   She offered evidence tending to show that she had stopped the frame by moving the belt which operated it from the tight to the loose pulley, by means of a shipper at the south end of the frame, and then walked the length of the frame, some twenty feet, to the north end, where the gears were situated; that when she reached the gears the frame was stopped and she began to clean them; that just after she began to clean the gears the frame started of itself, and her hand was caught in the gears and injured.   It was her duty to clean these gears; and the duty of taking care of the shifting apparatus which moved the belt and stopped or started the frame did not rest upon the plaintiff, but on the second and third hands and the overseer.   There was evidence that in the six or seven months before the accident the frame had started of itself sixteen times while the plaintiff was not there, and that other similar frames also had started of themselves.

The spinning frame was of the Marvel and Davol make, and the shipper was a Marvel and Davol shipper.   The plaintiff put in evidence that this kind of frame had not been made in twenty-eight years, and that the life of a shipper substantially like this is about twenty years.   There was evidence that this shipper had become loose some months before the accident, that the bottom bolt had become worn, and that the nut of this bolt had worked off by reason of the shaking of the machine and had been replaced occasionally, but would work loose in three weeks or thereabouts.   Edmond Gosselin, the defendant's third hand at the time of the accident, testified that he examined the shipper after the accident and found nothing about it except

that the shipper was loose, that the whole of it was loose, and that the looseness was caused by the bottom bolt being worn out; that he had charge of the belt and pulleys, and over him was the second hand and over him the overseer; that he put the belt on about two weeks before the accident; that at the time of the accident the belt was not cut very straight, it was cut a little crooked, not square; that he took both ends and put them together and hammered the clasp in; and he illustrated by means of two books how he brought the ends of the belt together. On cross-examination he testified that he found this bolt on the floor four weeks after the accident, that he put it back and tightened it and it was all right to use for a while; that the belt was like all other belts in the room, and he saw nothing the matter with it.

Stephen Myott testified that six months before the accident he was third hand of the room in which the plaintiff was hurt. Evidence having been put in that there had been no change of the starting or stopping apparatus of the frame in the meantime, he further testified that he then knew of the frame starting of itself, that he examined it and found that the shipper was loose and worn and the bottom bolt loose. On cross-examination he said that the frame started of itself because the nut came off; that he hammered in the bolt so as to prevent this; that the nut worked loose by the shaking and the frame again started of itself; that the machine would not start of itself unless there was trouble with the bolt; and that he thought the shipper and the bolt were both wrong. One Dailey also testified that with a belt cut crooked and fastened in the manner described by Gosselin there would be a likelihood of the machine starting of itself; and there was other evidence that there should have been a turned stud instead of the bottom bolt on the shipper; that if the lower nut or bolt on the shipper was worn the shipper would be loose, that such a shipper would not be suitable; that there would be a tendency to start the machine; and that the tendency of a loose nut or bolt would be to shift the belt from the loose to the tight pulley and cause the frame to start.

The first question that arises is on an exception to the exclusion of evidence. The plaintiff testified that while she was at

work in the spinning room a frame like that on which she was injured had started up. She then offered to show that this was a frame similar to the one on which the accident happened and one of those which she was tending, and that she called the third hand's attention to it. The judge on the defendant's objection excluded this evidence, and the plaintiff excepted. She now contends that this tended to show that the frame on which she was working could start up in the same way, and also to prove negligence on the part of the defendant by showing that the man charged by the defendant with the duty of repairing the machine had been warned of the danger of its starting up and its need of repair ; and she relies on *Donahue* v. *Drown*, 154 Mass. 21, in which such a question seems to have been admitted without objection, and was considered as bearing on the question of the plaintiff's own due care. But in the case at bar the object was to show the existence of a defect in another frame and negligence in the defendant. It did not appear that the conditions of the two frames were the same ; and we think that the judge rightly excluded the question. *Cohen* v. *Hamblin & Russell Manuf. Co.* 186 Mass. 544.

It did not appear that the nut came off from the lower bolt at the time of the accident. The defendant offered evidence upon which, taken in connection with the cross-examination of the plaintiff's witnesses, it has earnestly contended that it is mechanically impossible for this frame to have started of itself, whether or not the alleged defects in the belt and shipper had any real existence ; that it could not have started without human intervention ; that at least the larger number of the alleged instances of spontaneous starting of this frame and of others like it were fully accounted for by causes which appeared on the evidence ; and that these frames had all been recently overhauled and new parts put in for all that were worn out, so that they were made practically new. And the defendant argues with great force that even if the jury might have found that this frame did start of itself, yet this was so improbable an occurrence that it could not reasonably have been anticipated, and so the defendant could not be found to have been negligent in failing to guard against it. *Ross* v. *Pearson Cordage Co.* 164 Mass. 257. *Toland* v. *Paine Furniture Co.* 175 Mass. 476.

*Hill* v. *Iver Johnson Sporting Goods Co.* 188 Mass. 75. A model of the frame and shipper was produced at the argument, to illustrate and explain the grounds of these contentions. Without recapitulating the testimony, it is enough to say that this argument was put very forcibly, and well might have impressed the jury. But the weight of the evidence and the inferences properly to be drawn from it were all for the jury ; and it seems to us that they might have found upon the evidence which has been stated that this machine did start of its own accord, that its starting was due to a defect in the condition and arrangement of the belt and to a worn out and defective condition of the shipper and its bolts and nuts ; that the defendant had had sufficient notice of the existence of these defects to have enabled it to repair them, and that in the exercise of due care it ought to have done so ; and that this accident was due to its negligence in failing to make such repairs. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407. *Donahue* v. *Drown,* 154 Mass. 21. *Connors* v. *Durite Manuf. Co.* 156 Mass. 163. *Lynch* v. *Stevens Co.* 187 Mass. 397. *Gregory* v. *American Thread Co.* 187 Mass. 239. *O'Neil* v. *Ginn,* 188 Mass. 346.

The jury might have found that the plaintiff was in the exercise of due care. She was performing exactly the work she was employed to do, and apparently was performing it in the proper way. She had no duty of taking care of the shifting apparatus. The main circumstance relied on against her is that she had seen another frame start up before, without any one working on it; but such a circumstance was held in *Donahue* v. *Drown,* 154 Mass. 21, not to be decisive against the plaintiff ; and it is to be observed that all evidence of the circumstances of such former starting up was excluded in the present case upon the defendant's objection. And the defendant's contention as to the apparent impossibility of this accident happening in the manner alleged by the plaintiff has as to this question a strong bearing in her favor. *Packer* v. *Thomson-Houston Electric Co.* 175 Mass. 496.

We are of opinion that the case should have been submitted to the jury.

*Exceptions sustained.*