## WILLIAM CAYZER *vs.* STEPHEN G. TAYLOR.

In an action by a servant against his master for injuries sustained from the explosion of a steam boiler used in his business, the plaintiff introduced evidence without objection that there was no such fusible safety plug on the boiler, as was required by statute; and the presiding judge excluded evidence of a custom among engineers not to use such a plug; and instructed the jury that if the defendant knowingly used the boiler without the plug, and the want of it caused the accident, the plaintiff was entitled to recover; and refused to instruct them that if the defendant used all the appliances for safety, that were ordinarily used in such establishments as his, he was not liable in respect to this boiler, although he did not use the fusible plug.  *Held*, that the defendant had no ground of exception.

Ordinary care must be measured by the character and risks and exposures of the business and the degree required is higher where life or limb is endangered, or a large amount of property is involved, than in other cases.

Cayzer *v.* Taylor.

A master is responsible to his servant for injuries occasioned by the negligence of an incom petent fellow servant, knowingly or negligently employed by the master.

A master is liable to his servant for injuries resulting from a defect in his machinery, al-though the negligence of a fellow servant contributes to the accident.

ACTION OF TORT for injuries sustained by scalding from the collapse of a flue in a steam boiler owned and used by the defendant in his manufactory, while the plaintiff was in his employment. The causes of the accident, as alleged in the declaration, were that the defendant negligently managed his engine, and " did not provide a competent and suitable en-gineer and boiler and engine and pump and gauge and append-ages and machinery and precautions for safety used therewith, but carelessly and knowingly provided such as were not compe-tent and suitable and sufficiently safe, and knowingly and carelessly continued the same in use, and improperly used them while out of order and unsafe, either solely or in connection with his servant."

Trial in the superior court of Suffolk at January term 1857, before *Huntington,* J., who after a verdict for the plaintiff allowed the following bill of exceptions :

" Among the particulars which were alleged by the plaintiff against the sufficiency of the boiler, and to sustain which evi-dence was offered, was, that it was unprovided with a certain fusible safety plug, referred to in the *St.* of 1852, *c.* 247, and that the defendant used the boiler, knowing it to be so unpro-vided.

" The defendant, upon this point, offered evidence to show that it was not customary among persons having in use such boilers as the defendant's, and in such establishments as his, to use in connection with them such fusible plugs ; and he prayed the court to instruct the jury, that if the defendant's boiler was sup-plied with all such appurtenances and appliances for safety as such establishments were ordinarily supplied with, he was not liable in respect to his boiler, though in fact he did not have it supplied with the said fusible safety plug in the said statute mentioned. But the court rejected the evidence of a custom violating the requirements of the statute ; and instructed the

jury, that if the plaintiff had satisfied them that the defendant knowingly used his boiler without said plug, placed as the law directs, and that the want of it caused the accident, or essentially contributed to it, and that the injury would not have arisen had it been supplied, this might be used as evidence of negligence, and the plaintiff might have a verdict on this ground; and that it might be considered as part of the implied contract between the plaintiff and the defendant that the latter would comply with the law regulating the use of the boiler, so as to give the former a remedy if he sustained injury from the non-compliance with its enactments; but that if he used the boiler without this knowledge, he could not be charged with negligence on this ground, for he had not violated the law.

"Evidence was also introduced on the part of the defendant, tending to show that the accident would not have happened if the engineer had used ordinary care in the management of the boiler and its appurtenances; and to show that the defendant had in all respects used due care. And the defendant prayed the court to instruct the jury, that if they were satisfied that without negligence on the part of the engineer the accident would not have happened, the defendant was not liable.

"The court instructed the jury thus: The plaintiff must show that he himself was in the exercise of due or ordinary care at the time of the accident. This care must be adapted to the nature of the employment and to the hazards attending the business.

"If the plaintiff and engineer were in the same general employment or business, under one employer, it then becomes important to ascertain the legal relation of the parties. We have in the outset the general principle. A person entering into the service of another, in consideration of his compensation, takes upon himself the ordinary risk of the employment in which he engages; and this risk includes the negligent acts of his fellow workmen in the course of the employment. But a fellow workman's being negligent and unskilful on a particular occasion would not give a right of action. The implied contract between a master and servant is, that the master or principal will use such care as a prudent and careful man in the same

business, a business similar in its risks, character and extent, would use, both in the selection and employment of an engineer, and in the selection and use of engine, boiler, flues, pumps, pipes, cocks, gauges, valves and all appurtenances belonging thereto. If the defendant employed an unfit and improper person, or used an unfit engine, boiler, flues, gauges, valves and apparatus, or either of them, and such employment or use arose from want of ordinary care in the employer, and by reason of this want of care the injury was incurred, then the defendant would be responsible.

" The meaning of the language ' ordinary care ' was then defined, as distinguished from extraordinary care on the one hand, and negligence on the other. The care must be adapted to the nature of the business and employment. The jury will ascertain from the evidence in the case what at that time were the qualifications of an engineer in such an establishment as the defendant's was, and with such engine and apparatus. His qualifications are to be measured by the class of engine and the business done. The care used by the master in the selection of servants and machinery, engine and apparatus, is to be measured by the same standard. This standard would be higher in proportion as life or limb was endangered ; and higher where a large amount of property was involved, than a small amount. In other words, the care and prudence must be graduated by the character and risks and exposure of the business.

" It is contended that the defendant was negligent in the selection of an incompetent engineer, and negligent in continuing him in his employment. There are two inquiries here : 1st. Was the engineer competent or incompetent ? 2d. If he was not, had the master reason to know it ? If he had reason, and if he knowingly, or having good reason to know, and without due care and prudence, employed or continued in his employment such incompetent person, and the accident happened or injury arose by reason of such incompetency, and the plaintiff has satisfied you of this, the burden being on him, he is entitled to recover. If he was not negligent in this respect, or had not reason to know of this incompetency, and the injury did not

arise from this incompetency, he is not liable on this ground. If it was the careless act of an incompetent engineer, negligently and knowingly employed by the defendant, he would be liable; if it was the careless act of a competent engineer, he would not be liable, so far as this point is concerned.

" It is said the defendant was negligent in suffering his engine, pump, steam gauge, fusible plug, belts and apparatus and appurtenances for safety to get out of order and unsuitable and unsafe. If you are satisfied that he was negligent in this particular, and if the injury arose from this negligence, this would render the defendant responsible. If he was not so negligent, or if the injury did not arise from such cause, the defendant is not responsible.

" It is contended that the defendant was negligent in overloading his engine and boiler and apparatus; in subjecting them to steam power beyond their capacity and line of safety; in fastening down the safety valve and loading the lever with unsafe weights. If the defendant, either by himself or by directions to his servants, carelessly, unskilfully and improperly did any of those acts, and the injury was caused by such negligence or want of skill, he would be liable. If he did not go beyond the line of prudence, skill and care, he would not be liable.

" The jury returned a verdict for the plaintiff, and to the foregoing rulings and instructions the defendant excepts."

*C. Browne*, for the defendant. The plaintiff counted on the common law liability of the defendant, and not on the *St.* of 1852, *c.* 247. The question for the jury therefore was, whether the use of the fusible safety plug fell within that due and ordinary care which the defendant was bound at common law to exercise. *Bradley* v. *Boston & Maine Railroad*, 2 Cush. 539. *Linfield* v. *Old Colony Railroad*, 10 Cush. 568. *Shaw* v. *Boston & Worcester Railroad*, 8 Gray, 60. Yet the evidence on this point could not have been objected to as incompetent; because the use of the plug might be shown to be necessary to the exercise of ordinary care, independently of any statute. The refusals and instructions of the judge respecting ordinary care were calculated to mislead the jury upon this question.

The degree of care required of railroad corporations does not apply to a business not attended with the same extraordinary privileges and extraordinary risks.   And it is well settled that in any employment the negligence of a workman is among the ordinary risks which his fellow workmen take.   The doctrine indicated in some English cases (*Wigmore* v. *Jay*, 5 Exch. 358 ; *Wiggett* v. *Fox*, 11 Exch. 832 ;) that the employer is bound to furnish proper machinery and competent servants, has never been adopted in this country.   Nothing has ever been required here beyond ordinary care; and whatever may be the extent of the obligation of the employer to furnish safe and sufficient machinery in the first instance, keeping it in repair afterwards is the duty of the servants, as much as any other part of his business.   *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 62 *King* v. *Boston & Worcester Railroad*, 9 Cush. 112.   *Noyes* v. *Smith*, 28 Verm. 59.   There is nothing here to show that the defendant did not have his boiler provided with a better and more suitable plug than the one mentioned in the statute ; and if such was the fact, its being casually and partially disordered so as not to be in condition to avert this accident was not enough to prove the defendant guilty of want of ordinary care in his business.

The judge should have instructed the jury that if the acci-dent would not have happened without negligence on the part of the engineer, the defendant would not be responsible.   The principle that the servant in hiring himself to the master is pre-sumed to be willing to run all the ordinary risks of business, and among them that of negligence in his fellow servants, should be liberally applied for the protection of employers.   If the ma-chinery was such that, with the exercise of due and ordinary care on the part of the engineer, the accident would not have happened, then the negligence of the engineer was the proxi-mate cause of the accident, and the defendant is not liable. *Hayes* v. *Western Railroad*, 3 Cush. 272.

*C. G. Thomas*, for the plaintiff, cited *Brydon* v. *Stewart*, 2 Macqueen, 30 ; *Wiggett* v. *Fox*, 11 Exch 832 ; *Noyes* v. *Smith*, 28 Verm. 59

THOMAS, J. 1. The defendant excepts to the admission of evidence that his boiler was not provided with the fusible plug prescribed to be used by the *Sts.* of 1850, *c.* 277, and 1852, *c.* 247, and the instructions of the court as to the use of such evidence, when admitted. The obvious, and we think conclusive, answer to this exception is, that the evidence was admitted without objection and without any qualification or limitation, and when thus admitted it was competent evidence upon the question of the defendant's liability, arising under the statute or at common law. The evidence being thus admitted, if the objection had been taken that the declaration was imperfect, an amendment would have been allowed, almost as a matter of course. But the objection was not taken, the exception was not made, and the point is not open.

2. The defendant sought to break the force of the testimony, and offered to show that it was not the custom among persons, using such boilers as his, to have and use such fusible plugs. The court rightly held that a custom not to observe the law could not be shown.

3. The exception to the instructions of the presiding judge as to what was meant by ordinary care cannot be sustained. The instructions were good sense and good law, well expressed. What is ordinary care cannot be determined abstractly. It has relation to and must be measured by the work or thing done and the instrumentalities used, and their capacity for evil as well as good. What would be ordinary care in one case may be gross negligence in another. We look to the work, its difficulties, dangers and responsibilities, and then say, What would and should a reasonable and prudent man do in such an exigency? The word "ordinary" has a popular sense, which would greatly relax the rigor of the rule. The law means by "ordinary care" the care reasonable and prudent men use under like circumstances.

4. The next ground of exception, upon which the defendant relies, is the refusal of the presiding judge to instruct the jury that if the accident would not have happened without negligence on the part of the engineer, the defendant was not liable. We think such instruction could not have been given. The de-

fault of the defendant might have been, not only in having a boiler imperfectly constructed and guarded, but an incompetent and habitually careless and negligent engineer. It is now well settled law, that one entering into the service of another takes upon himself the ordinary risks of the employment in which he engages, including the negligent acts of his fellow workmen in the course of the employment. *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49. *King* v. *Boston & Worcester Railroad*, 9 Cush. 112. *Gillshannon* v. *Stony Brook Railroad*, 10 Cush. 228. It has not been settled that the master is not liable for an injury which results from the employment of an incompetent servant or use of a defective instrument. If the defendant employed a competent engineer, and used a boiler properly constructed and guarded, he would not be liable for injuries resulting from an act of carelessness or negligence of such engineer. But we are not prepared to say that if one uses a dangerous instrumentality without the safeguards which science and experience suggest or the positive rules of law require, he is not to be responsible for an injury resulting from such use, because the negligence of one of his servants may have contributed to the result, or because a possible vigilance of the servant might have prevented the injury. The very object and purpose of a safeguard like the fusible plug are protection against the occasional carelessness and negligence of the engineer. It is intended to be in some degree a substitute for his vigilance — to keep watch if he nods. To say that the master should not be responsible for an injury which would not have happened had a safeguard required by law been used, because the engineer was negligent, would be to say, in substance and effect, that he should not be liable at all for an injury resulting from the failure to use it.

The case of *Hayes* v. *Western Railroad*, 3 Cush. 270, relied upon by the defendant, proceeds upon the ground that the injury was caused by the negligence of the workman, his failure to be in his place and discharge his duty, and that the train being short of hands was wholly immaterial. Otherwise, it would be difficult to sustain it. See language of the court, p. 274.

The instructions of the presiding judge upon the liability of

24 *

the master, as affected by the relation of the defendant as fellow servant of the engineer, are not in our judgment liable to just exception. The counsel for the defendant asks of us a liberal application of the principle by which the servant is presumed to assume the risks of the business, and among others the negligence of his fellow servants, for the protection of the master. The principle should not be so extended as to impair in the least degree the obligation resting upon the master, in the prosecution of a business involving unusual risk of health or life or limb, to employ well guarded instruments and competent agents.

*Exceptions overruled.\**

* See *Bartonshill Coal Co.* v. *Reid,* 3 Macqueen, 266 ; *Bartonshill Coal Co.* v. *McGuire,* 3 Macqueen, 300 ; *Holmes* v. *Clarke,* 6 H. & N. 349 ; *Searle* v *Lindsay,* 11 C. B. N. S. 429; *Seaver* v. *Boston & Maine Railroad,* 14 Gray, 466 ; *Ryan* v. *Fowler,* 24 N. Y. 410; *Buzzel.* v. *Laconia Manuf. Co.* 48 Maine, 113