SCHWARZSCHILD & SULZBERGER COMPANY V. CYRUS V. WEEKS.

No. 14,230.    (83 Pac. 406.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Injury to Employee—Negligence of the Master*. In an action by a servant against the master for negligence, where the negligent act is in violation of a positive duty which the master owes to the servant, that becomes the controlling fact in determining the master's liability; and where the negligence of the master is the proximate cause of the injury the master will be held liable, notwithstanding the negligence of the master may have been set in operation by the act of one who otherwise might be held to be a fellow servant.

2. ———— *Duty of Master*. The master owes to the servant the duty to take reasonable precautions to protect the servant from injury.

3. ———— *Proximate Cause*. Negligence is the proximate cause of an injury when it appears that "the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

Error from Wyandotte district court; E. L. FISCHER, judge. Opinion filed November 11, 1905. Affirmed.

STATEMENT.

DEFENDANT in error sued to recover for personal injuries occasioned by the operation of a friction hoist used in raising and lowering beeves in a packing-house. The case was here once before, and was reversed for error in the instructions. (*Schwarzschild & Sulzberger Co. v. Weeks,* 66 Kan. 800, 72 Pac. 274.)

At the close of plaintiff's testimony upon the second trial he asked leave to amend his petition to conform to the facts proved. Defendant objected, and the court overruled the objection. The amendment was dictated to the court reporter, but was not written out or attached to the petition until the time of the settlement of the case-made, when, by order of the

judge, it was written out and attached to the original petition before the case-made was settled.

The original petition alleged that, in the process of slaughtering beeves, after the cattle were killed they were shackled by the hind feet and hoisted to an overhead track, and thus conveyed to the skinning beds. A beef was dropped on each bed, where men skinned the legs and washed the shanks; then a heavy iron spreader was attached to the hind legs and the beef was again hoisted, and, as work progressed upon it, conveyed along the overhead track. After the carcass of a beef had been hoisted the second time "fell-beaters" removed the hide, "gutters" opened the paunch, and "paunch-pullers" removed the paunches. It was the duty of the man following the shank-washer to hoist the carcass to the proper elevation for completing the work. The hoisting was done by means of an appliance called a friction hoist, operated by a rope. The operator was called the hoister. Next following him were the fell-beaters, who with cleavers beat away the skin from the shanks. To operate the friction hoist required skill and experience. If the rope were unskilfully handled the beef would fall to the floor and endanger the lives of the workmen. Plaintiff was employed as hoister in charge of the hoisting apparatus. It became his duty, in case a workman in front of him left the line for any purpose, to step forward and take the place of that workman; and it then became the duty of one of the fell-beaters immediately behind him to take his place and operate the hoist, the fell-beaters being experienced and skilled in the operation thereof.

At the time of the injury to plaintiff one of the workmen ahead of him was called away. Plaintiff took his place, and was engaged in washing shanks when one of the paunch-pullers, without the knowledge of plaintiff or of the fell-beaters, seized the rope and attempted to raise a beef immediately behind plaintiff, and by reason of his unskilfulness and inexperience in the

operation of the hoist the beef dropped upon plaintiff and injured him. It was further alleged that the defendant company, without the knowledge of plaintiff, had allowed and permitted other employees who were inexperienced and unskilled in its operation, including this particular one, to operate the hoist, and that defendant was negligent in so doing.

The amendment alleged that it was an established rule that no one but the hoister and the two fell-beaters behind him should operate the hoist, and that without plaintiff's knowledge the rule became relaxed; that the man Shortridge, who attempted to operate it, was not informed of the rule or instructed in the use of the hoist.

The answer, in addition to a general denial, set up that plaintiff had assumed the risk of the injury; also, that the injury was the result of the negligence of fellow servants.

Defendant offered no evidence, but elected to stand upon its demurrer to the evidence of the plaintiff. The jury found for plaintiff. The court denied the motion for a new trial, and defendant brings the case here for review, alleging numerous errors.

*Frank P. Sebree, J. D. Wendorff,* and *Angevine & Cubbison,* for plaintiff in error.

*William B. Sutton,* and *H. E. Dean,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: Counsel for plaintiff in error devote a considerable part of their brief to the contention that it was error to allow the amendment, because there was no evidence in support of it, and what there was, if any, was admitted over their objection; that the amendment was not made, in fact, until months after the trial, at the time fixed for the settling and signing of the case-made, and introduced a new cause of action,

Schwarzschild v. Weeks.

which was barred by the statute of limitations. The case-made shows that permission to make the amendment was asked and granted at the close of plaintiff's testimony; that prior to the settling and signing of the case-made it was written out from the notes of the court reporter by order of the judge, attached to the original petition, and incorporated in the case-made; so that the question whether it was made at the time it purports to be is immaterial. We are bound by the recitals of the case-made.

It is urged that, there being no allegation in the original petition in reference to an established rule, it was error to permit evidence of such a rule. At the same time it is contended that the evidence introduced failed to prove the existence of any established rule. To the latter contention we agree. The most that can be said for the evidence is that it tended to prove that a sort of method prevailed in the operation of the killing beds, and that certain workmen had certain duties in connection with the operation of the friction hoist. So far as the evidence of which complaint is made tended to prove these things, it was not a departure from the general scope of the original petition. Plaintiff in error was not prejudiced by the attempt to prove the establishment of a fixed rule, since the attempt failed. The allegation in the amendment of the existence of a rule stands as though made in the original petition and not proved.

The whole contention about the amendment to the petition, however, becomes immaterial. It appears from an examination of the instructions that the trial court ignored the amendment entirely and instructed as if it had not been made. This practically takes the amendment out of the case, and with it goes one of the main contentions.

Plaintiff in error argues that the court should have sustained the demurrer to the evidence, and raises several points, the chief of which are: (1) That de-

13—72 KAN.

fendant was not guilty of any negligence; (2) that the injury was caused by the act of a fellow servant. We shall consider these points together.

The fellow-servant doctrine is not involved in the case, as we view it. The master owes certain duties to the servant, among them the duty to take reasonable precautions to prevent an injury to the servant while at work. In *Brick Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856, it was held that whenever the negligent act violates a duty which the master himself owes to the servant, that becomes the controlling fact in determining the master's liability, notwithstanding the negligence of the master was set in operation by one who otherwise might have been designated a fellow servant. In some of the controlling principles that case was similar to this, though the facts there were different, and there was involved the question of the duty of a pit-boss to warn the employees of certain dangers; but the duty of the master to conduct his business "in a manner affording reasonable safety to his employees" is recognized.

In *Daniel's Adm'r v. Ches. & O. R'y Co.,* 36 W. Va. 397, 412, 15 S. E. 162, 16 L. R. A. 383, 32 Am. St. Rep. 870, the court, in enumerating the personal non-assignable duties "which the master owes his servant, no matter by whom performed," and quoting from 28 W. Va. 610, 617, 57 Am. Rep. 695, said:

"The duties of the master or employer may be summed up as follow: (1) To provide safe and suitable machinery and appliances for the business (including a safe place to work). This includes the exercise of reasonable care in furnishing such appliances, and the exercise of like care in keeping the same in repair and in making proper inspections and tests. (2) To exercise like care in providing and retaining sufficient and suitable servants for the business· (and instructing those who, from newness or age, evidently need it). (3) To establish proper rules and regulations for the service, and, having adopted such, to conform to them."

In Bishop on Non-contract Law, section 691, the author says:

"The leading principle, around which the others cluster, is, that the master should exercise, in the carrying on of his business, all the watchfulness over his servants and employ all the safeguards which a reasonable and considerate prudence may dictate. For any violation of this duty, resulting in an injury to a servant, he [the master] is answerable to him."

Upon the general proposition that the duty rests upon the master not to expose the servant, in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care, see *Pullman Palace Car Co. v. Laack,* 143 Ill. 242, 32 N. E. 285, 18 L. R. A. 215; *Cayzer v. Taylor,* 76 Mass. 274, 69 Am. Dec. 317; *Gilman v. Eastern Railroad Corporation,* 92 Mass. 233, 238, 87 Am. Dec. 635; Wood, Mast. & Serv., 2d ed., § 326; Beach, Cont. Neg., 3d ed., § 353; *Hough v. Railway Co.,* 100 U. S. 213, 25 L. Ed. 612.

In order that the master may claim exemption from liability for injuries to a servant on the ground that the negligent act was that of a fellow servant the master must have exercised reasonable care to prevent the injury. The risk that the master may neglect to do this is not one that the servant assumes. (*Pullman Palace Car Co. v. Laack,* 143 Ill. 242; *Coppins v. N. Y. C. & H. R. R. R. Co.,* 122 N. Y. 557, 25 N. E. 915, 19 Am. St. Rep. 523; *Keast v. Santa Ysabel Gold Mining Co.,* 136 Cal. 256, 68 Pac. 771.)

The case at bar is analogous to that of the sudden and unexpected starting of dangerous machinery, where the starting is due to the negligence of the master or some one for whose negligence the master is responsible. In such cases the master is held liable. (5 Thomp. Com. L. of Neg. § 5422; *Blanton v. Dold,* 109 Mo. 64, 18 S. W. 1149; *Donahue v. Drown,* 154 Mass. 21, 27 N. E. 675.)

A duty like that requiring the master to establish

rules for the conduct of his business for the safety of his servants is the one which requires him, in "carrying on a dangerous or complicated business, to reduce it to such a system and to conduct it in such a manner as will best promote the safety of his servants; and he is consequently liable to a servant for an injury occasioned by a defective system of using his machinery or conducting his business, as well as for injuries occasioned by defects in such machinery." (4 Thomp. Com. L. of Neg. § 4175. See, also, *Hunn v. Railroad Co.*, 78 Mich. 513, 44 N. W. 502, 7 L. R. A. 500.)

Here was a dangerous appliance—not in the sense that the persons using it might be injured, but dangerous to others. Operated by a skilful and experienced person, there was danger to no one. Operated by an inexperienced and unskilled person, a heavy beef, with the added weight of the iron spreader, itself weighing hundreds of pounds, might fall upon and among other workmen, while their attention was required to be given to their own work, and their lives would become endangered. There is some evidence in the record which fairly tends to prove that there had been a method of procedure in the operation of the work on the killing beds, as set out in plaintiff's petition; that there were among the workmen usually about ten common laborers, including the paunch-pullers, without any experience in the operation of the hoist; and witnesses testified that frequently these common laborers pulled the rope which operated the hoist, and did this in the presence of the foreman. Plaintiff testified that he had no knowledge of this, and the master offered no testimony to dispute it. All the witnesses familiar with the operation of the hoist agree that it required experience and skill to operate it safely and properly. The rope had to be pulled just right—just far enough—or the beef would be dropped suddenly upon the workmen.

The workman Shortridge did what was natural, and

Schwarzschild v. Weeks.

what might have been expected of any of the common laborers on the beds, unless instructed to the contrary. There was a rope to be pulled; some one said "pull the rope," and, wishing to be useful, he pulled it. He knew nothing about how to do it properly, and the result was the injury to the plaintiff. The duty of the master to use ordinary care to prevent injury to plaintiff by establishing and enforcing a rule, or by some other reasonable method, so far as the evidence shows, was ignored. The master did nothing to protect the servant. It is not claimed that Shortridge was negligent in the ordinary sense of a servant who knows how to do a thing properly and carelessly does it wrong. He acted ignorantly. He had no duty to perform except not to act, and he never had been instructed not to act. As previously stated, it was natural for him or any of the other common laborers, in the absence of any rule or instruction, to attempt to do what he did. His act became possible from the negligence of the master. The proximate cause of the injury was not the act of Shortridge but the neglect of the master to take reasonable precautions to see that such a thing did not occur.

It is held generally that negligence is the proximate cause of an injury when it appears that "the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." (*Milwaukee, etc., Railway Co. v. Kellogg,* 94 U. S. 469, 24 L. Ed. 256. See, also, *Railway Co. v. Parry,* 67 Kan. 515, 73 Pac. 105.)

The petition, it is true, does not allege that it was the duty of defendant to adopt rules or methods in the operation of the killing beds to provide for the safety of plaintiff. It recites the facts—the usual method employed, and the departure from the usual method. It is shown in evidence that no care was taken in fact to prevent these common laborers from

doing what it was clearly natural and probable that they might do, and which it appears one of them did do. The law defines the duty of the master, however, and while it is not necessary here to decide what would have been reasonable precautions for the master to have taken to prevent injury to the servant, it is sufficient that, as the case stood at the close of plaintiff's testimony, there was some evidence that no precautions of any kind had been taken and that the failure to take reasonable precautions was the proximate cause of the injury to plaintiff. There was no error in overruling the demurrer.

Error is also claimed in the instructions. The twelfth instruction, of which complaint is made, relates to the law of fellow servants; and, while it might be open to some criticism, plaintiff in error was not prejudiced, because the negligence of a fellow servant is not available as a defense in this action. Instruction No. 13 fairly states the law governing the facts in evidence. The words "were liable" are qualified by the phrase "under the method of operating defendant's killing beds." The complaint is that there was no evidence to warrant the instruction; but, as we have said, there is some evidence that common laborers, without experience, and in the presence of the foreman, frequently attempted to operate the hoist. "The employer is chargeable with knowledge of whatever it is his duty to find out and know." (5 Thomp. Com. L. of Neg. § 5404.)

Error is specified in overruling defendant's challenge for cause of a juror, and also on account of some remarks of counsel for plaintiff in his opening statement. These matters cannot be considered, for the reason that they do not appear in the record, except in the form of an affidavit, and the record shows that this affidavit was filed the day after the motion for a new trial was denied. The record does not disclose that the court's attention to these alleged irregularities was challenged by the motion for a new trial.

Insurance Co. v. Elison.

We find no error in the instructions, and in our view of the law of the case there was sufficient evidence to submit to the jury upon the allegations in the petition, and to support the verdict. The judgment is affirmed.

All the Justices concurring.