MABEL HANNA, *Appellee*, V. THE CHICAGO, ROCK IS-
LAND AND PACIFIC RAILWAY COMPANY, *Appellant*.

No. 18,072.

SYLLABUS BY THE COURT. ·

1. NEGLIGENCE—*Breach of Implied Duty—Of Contract—Rule as
   to Measure of Damages.* The principles of negligence and of
   liability therefor are the same whether . the negligence is a
   breach of duty implied by law, in the absence of all contract,
   or a breach of duty arising out of a contractual relation; the
   difference being only as to the extent of liability. Where the
   duty arises out of contract, such damages only can be re-
   covered for a breach of the contract as, under all the circum-
   stances, could, at the time of the making of the contract, have
   been reasonably anticipated from a breach thereof.

2. RAILROAD—*Maintaining Telegraph Line—Liable for Delayed
   Telegram—Ultra Vires no Defense.* A corporation, organized
   for the purpose only of doing a general railroad business in
   the carriage of persons and property and not to conduct a
   telegraph business, but which maintains a telegraph line for
   its own convenience in conducting and expediting its business,
   when it receives a telegram to be transmitted over its tele-
   graph line and receives a valuable benefit therefrom can not
   avail itself of the defense of *ultra vires* when the contract has
   been in good faith fully performed by the other party.

Appeal from Shawnee district court, division No. 2.
Opinion filed May 10, 1913. Modified.

*Paul E. Walker*, and *Luther Burns*, both of Topeka,
for the appellant.

*J. J. Schenck*, and *W. E. Atchison*, both of Topeka,
for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellee, with her three small chil-
dren, reached St. Joseph, Mo., on her return to Topeka
from Iowa. She arrived in St. Joseph in the evening
without money and wired her husband in Topeka for
one ticket, one half ticket and two dollars cash. On

receipt of the telegram the husband went to appellant's ticket office, showed the ticket agent the telegram and told him that his wife and three children were in the union depot in St. Joseph and needed money; that he wanted to telegraph her one ticket, one half ticket and two dollars cash. As to what was said about sending the telegram, there is a wide variance between the testimony of the husband, Mr. Hanna, and the testimony of the agent, as there is also between the testimony of Mrs. Hanna and that of the depot policeman at St. Joseph and a woman clerk in a hotel at that place. As it was the province of the jury to determine the credibility of the witnesses and the jury found in favor of Mrs. Hanna, it must be assumed that they gave credit to the testimony produced by her where it was in conflict with testimony produced on behalf of the appellant.

Mr. Hanna says he told appellant's agent at its depot at Topeka that if the agent could not get the telegram there right away, he would get on the train and go to Kansas City, and the agent said he would get it there in a few minutes. Also that he told the agent, in substance, that if the agent could not get the telegram to Mrs. Hanna that night, he would go to Kansas City and from there to St. Joseph, and the agent said that she would get it in ten minutes and that it would be no use to go to Kansas City and St. Joseph at an expense for nothing. That thereupon he paid the agent $2.70 for the tickets and $2 to be transmitted to his wife. There was also evidence on the part of the appellee that she remained in the depot at St. Joseph all night without supper and that she held her baby in her arms; that she sat in a seat with arm rests so she could not lie down, and that the two older children laid on the floor all night; that the tickets and money were not delivered until 11 o'clock of the next day; that the appellee and her children had no supper or breakfast and no means of procuring a bed, but stayed in the

depot as stated; that she got a train on appellant's railroad sometime in the afternoon and arrived in Topeka about 6:30 that evening; that from the exposure and hardships endured the plaintiff was sick and under the doctor's care for some time after her return.

At the close of the trial, in answer to special questions submitted by the appellant, the jury returned answers to the questions as follows:

"A. [Q.] Did the plaintiff receive the tickets and the two dollars in cash before she left St. Joseph? Answer: Yes.

"1. If you find that the plaintiff is entitled to damages, state whether or not you have allowed anything for punitive or exemplary damages? Answer: Yes.

"2. If you find for the plaintiff, state whether you allow anything on account of the fact that the plaintiff was unable to nurse her infant child, or for the annoyance or trouble consequent thereto? Answer: No.

"3. If you find for the plaintiff, do you allow anything in your verdict for mental pain and suffering of the plaintiff? Answer: No.

"4. If you find for the plaintiff, do you allow anything in your verdict for medical attendance? Answer: No.

"5. If you find for the plaintiff, state in detail for what elements of damage you permit recovery. Answer: Inconvenience, physical pain and suffering and punitive.

"6. If you find for the plaintiff, state if you allow anything for alleged sickness which it is claimed occurred immediately after the night spent in St. Joseph by the plaintiff? Answer: No.

"7. Was there any money paid to the defendant for sending the telegram in question, and if so, how much? Answer: There was no money paid for telegram."

Over the objection of the appellant, the court on its own motion directed the jury, in addition to their general verdict, to find upon three questions of fact stated in writing by the court. This practice is approved. The questions and answers thereto are as follows:

"1. What amount, if any, do you allow the plaintiff for inconvenience? Answer: $25.00.

"2. What amount, if any, do you allow plaintiff for physical pain and suffering? Answer: $700.00.

"3. What amount, if any, do you allow plaintiff for exemplary damages? Answer: $225.00."

The jury returned a verdict in favor of the appellee for $950. A motion for a new trial was overruled and judgment was rendered in favor of appellee in accordance with the general verdict.

The assignments of error are, in part, that upon the undisputed facts the appellee was not entitled to recover and the court erred, (1) in refusing to sustain the demurrer to the evidence of the appellee; (2) in refusing to give to the jury the instruction requested, in the nature of a directed verdict in favor of the appellant; (3) in refusing to grant a new trial; (4) in rendering judgment in favor of appellee.

The appellant insists that "the cause of action, if any existed, was *ex contractu* and not *ex delicto*. It was an action for damages for alleged breach of contract, and not in tort"; also, that an action for negligence can only be maintained for the unintentional failure to perform a duty implied by law whereby damages naturally and proximately result to another, citing 21 A. & E. Encycl. of L. 457.

The appellant contends that this action can only be maintained, if at all, for a violation of the contract. The appellee, on the other hand, contends that the rule would be the same whether this were an action *ex contractu* or *ex delicto*, and makes the following quotation from 21 A. & E. Encycl. of L. 461, note:

"The principles of negligence are the same whether the negligence is a breach of a duty implied by law in the absence of all contract or a breach of duty arising out of a contractual relation."

Section 435 of Wharton on The Law of Negligence is also cited, as follows:

"Where a contract creates a duty, the neglect to perform that duty, as well as the negligent performance

of it, is a ground of action for tort. Hence it is at the election of the party injured to sue either on the contract or the tort."

(See, also, *Butts v. Collins,* [N. Y.] 13 Wend. 139, 154; 21 A. & E. Encycl. of L. 461; Bishop on Non-Contract Law, §§ 73, 74; Beach on Contributory Negligence, 2d ed., § 6.) ·

However, it ·is conceded that in an action for a breach of a contract only such damages can be recovered as are the natural and probable consequences of its breach.

In *Schwarzschild v. Weeks,* 72 Kan. 190, 83 Pac. 406, it was said:

· "Negligence is the proximate cause of an injury when it appears that 'the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the ·attending circumstances.' " (Syl. ¶ 3.)

While that case was an action for damages not resulting from any special contract, but for an injury resulting from a breach of duty implied by law, there are ample authorities, in addition to those above cited, to show that the principle applies equally to the violation of a duty imposed by contract as to a duty implied by law. In actions based on contract there is this limitation, that the recovery can only be for such damages as might be reasonably anticipated from a breach of the contract. This limitation is recognized in the instructions given in this case. We therefore regard it as immaterial to consider whether the action is *ex delicto* or *ex contractu.*

From the information conveyed to appellant's agent by the telegram from Mrs. Hanna and the statements of Mr. Hanna, it seems that great inconvenience · and · suffering could have been reasonably apprehended as a natural and probable consequence if the appellant failed to deliver the message promptly that evening. It did fail to deliver the message for about fifteen

hours. The agent assured Mr. Hanna that it would be there in ten minutes. The telegram, itself, apprised all other officers and agents of the appellant of the necessity for speedy action. As testified to by the appellant's agent, it contained the injunction, "Rush, rush, rush."

The next principal contention of the appellant is that it was a railroad company engaged in the business of transporting freight and passengers and was not a telegraph company; that it operated a telegraph line only for its own convenience and in expediting its business and not for public service. On the other hand, it is contended that the appellant is estopped from setting up this defense by reason of the fact that the contract made for the benefit of the appellee was fully executed on her part. This seems to be the well-settled rule of law. Both the appellant and the appellee were interested in the execution of the contract, the appellant to get the business of carrying the passengers upon its railroad and the appellee to get the two dollars expeditiously delivered to relieve her from a painful and embarrassing situation. The appellant undertook to perform this service, fully apprised of the necessity for immediate action, and received money in payment for the tickets and two dollars for the appellee. The rule is well stated in 29 A. & E. Encycl. of L. 50. It reads:

"It is now very well settled that a corporation can not avail itself of the defense of *ultra vires* when the contract has been in good faith fully performed by the other party and the corporation has had the full benefit of the performance and of the contract."

(See, also, 29 A. & E. Encycl. of L. 70.)

In *Town Co. v. Morris*, 43 Kan. 282, 23 Pac. 369, it was said:

"A corporation which has enjoyed the benefits of a contract can not plead that it was *ultra vires,* where no fraud is intended or has been committed." (Syl. ¶ 1.)

Bank v. Robertson.

On the question of exemplary damages, the court instructed the jury as follows:

"In determining this question you should take into consideration all of the evidence in the case bearing upon the question of negligence of the defendant and determine from it whether or not the defendant was guilty of such gross negligence as amounted to wantonness in not delivering to plaintiff the tickets and money within a reasonable time under all the facts and circumstances proven in the case."

We think this was a correct statement of the law, but, as contended by the appellant, while the evidence unquestionably showed the appellant guilty of negligence, we do not think it justified a finding that appellant was guilty of such gross negligence as amounted to wantonness.

We have considered all the specifications of error and arguments of appellant.

The judgment is modified by eliminating the $225 exemplary damages, thereby reducing the judgment to $725, and when so modified it is affirmed.